<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SCP DISTRIBUTORS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NICHOLAS POOLS INC., *et al.*, <br><br> Defendants. | Civil Action No. 22-6721 (ZNQ) (RLS) <br><br> **MEMORANDUM OPINION** |

<u>**QURAISHI, District Judge**</u>

This matter comes before the Court upon Third-Party Defendants JL Commercial Real Estate LLC ("JL") and Jack Lench's ("Lench") Motion to Dismiss (ECF No. 33), Third-Party Defendant Sarah Greenberg's ("Greenberg") Motion to Dismiss (ECF No. 35), and Plaintiff SCP Distributors LLC's ("SCP") Motion to Sever or Bifurcate third-party claims (ECF No. 42). Defendants and Third-Party Plaintiffs Nicholas Pools, Inc. (the "Business"), Sotiris Sergiou ("Mr. Sergiou"), and Theodora Sergiou ("Ms. Sergiou") (together the "Sergious"), (collectively "Nicholas Pools") opposed JL and Lench's Motion to Dismiss (ECF No. 44) and Greenberg's Motion to Dismiss (ECF No. 45), as well as SCP's Motion to Sever (ECF No. 48). JL and Lench (ECF No. 47), Greenberg (ECF No. 46), and SCP (ECF No. 49) replied. After careful consideration of the parties' submissions, the Court decides the motions without oral argument pursuant to Local Civil Rule 78.1. For the reasons outlined below, JL, Lench, and Greenberg's Motions to Dismiss will be granted, and SCP's Motion to Sever or Bifurcate third-party claims will be denied.

I.      **BACKGROUND**

    A.      **Procedural Background**[1]

On November 22, 2022, SCP filed a Complaint in this Court against Nicholas Pools alleging various breach of contract claims stemming from the alleged breach of a Credit/Business Application and Agreement (the "SCP Agreement"). (Compl. ¶¶ 7, 1–43, ECF No. 1; *see generally* SCP Agreement, ECF No. 1-1.) SCP alleges that under the SCP Agreement, Nicholas Pools agreed to purchase certain pool supplies and equipment. (Compl. ¶ 7; *see generally* SCP Agreement.) In exchange for SCP's agreement to sell supplies to Nicholas Pools, the Sergious executed and delivered to SCP a personal guarantee to pay any of Nicholas Pools' outstanding obligations to SCP. (Compl. ¶ 8.) As of October 28, 2022, SCP alleges Nicholas Pools has failed to pay $332,970.70 under the SCP Agreement for the purchase of supplies from SCP. (*Id.* ¶¶ 11–13.) SCP brought its Complaint in this matter to collect that sum. (*See generally id.*)

On January 25, 2023, Nicholas Pools filed a Third-Party Complaint (the "TPC") against Third-Party Defendants JL, Lench, Ocean Pools & Spas Corp. ("Ocean"), Nissan Gelbwachs ("Gelbwachs"), Dov Kurlander ("Kurlander"), and Greenberg (collectively "Third-Party Defendants"). (TPC ¶¶ 1-11, ECF No. 9.) The TPC alleges that Third-Party Defendants are liable for the debt that Nicholas Pools accrued to SCP because Third-Party Defendants assumed Nicholas Pools' SCP liabilities after purchasing the Business. (*See generally id.*) In so alleging, Nicholas Pools brings eight counts against Third-Party Defendants: (1) Breach of Contract (Promissory Note) ("Count One"); (2) Breach of Contract (Personal Guarantee) ("Count Two"); (3) Breach of Contract (Asset Purchase Agreement) ("Count Three"); (4) Common-Law Fraud ("Count Four");

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint and Third-Party Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

2

(5) Breach of the Implied Covenant of Good Faith and Fair Dealing ("Count Five"); (6) Promissory Estoppel ("Count Six"); (7) Unjust Enrichment ("Count Seven"); and (8) Unilateral Mistake ("Count Eight"). (*Id.* ¶¶ 115–92.)[2] Only three of Nicholas Pools' eight claims, however, implicate JL, Lench, and/or Greenberg: Counts Four, Six, and Seven. As such, the Court recites only the facts necessary to contextualize and resolve the motions to dismiss these three claims against the movants.

### B.     Factual Background

In the Fall of 2022, Nicholas Pools was contemplating a sale of the Business. (*See id.* ¶¶ 12-18.) At that time, Ms. Sergiou was a 51% shareholder of Nicolas Pools stock, and Mr. Sergiou was a 49% shareholder of Nicholas Pools stock. (*Id.* ¶¶ 2–3.) On October 27, 2021, Lench, a managing member of JL, met with the Sergious and Ms. Sergiou's father, Nicholas Christofi ("Christofi"), to discuss whether the Sergious and Christofi would be interested in selling the Business and the building it occupied. (*Id.* ¶¶ 5, 14.)[3]

About a month later, on November 24, 2021, the Sergious again met with Lench to discuss the sale of the Business. (*See id.* ¶ 16.) JL, through Lench,[4] agreed to purchase the Business for $2,000,000 and to assume all the liabilities (the "Assumed Liabilities") of the Business. (*See id.*)

---

[2] Nicholas Pools lists nine counts but the counts labeled seven and eight are both Unjust Enrichment claims under different theories. (*See* TPC ¶¶ 177–86.) As such, the Court interprets these counts as one count, but considers both theories of Unjust Enrichment in considering Count Seven.

[3] Christofi, along with his son Louis, owned the building the Business occupied. (TPC ¶ 13.)

[4] The Court notes that Nicholas Pools appears to argue in their briefing that Lench and Greenberg are agents or "silent partners" to JL and/or Ocean. (Nicholas Pools' Opp'n Br. 6–8 (stating, in part, that "Greenberg and Lench worked together under a business identified as JL."); 10 (stating that Greenberg, like Lench, "is acting as an agent at best, or a silent partner for . . . Ocean).) There is, however, little to no mention of any agency relationship in the TPC. (*See generally* TPC.) In light of this confusion, the Court considers all Counts against JL, Lench, and Greenberg separately.

3

On February 4, 2022, negotiations continued between Lench and Nicholas Pools. (*Id.* ¶ 23.) The parties agreed on the essential terms of sale, with Lench[5] agreeing to pay $1,400,000 down and $600,000 payable in twelve monthly installments of $50,000. (*Id.*) These payments were evidenced by a promissory note. (*Id.*)

On February 7, 2022, Nicholas Pools received a letter of intent ("LOI") for the sale of the Business. (*Id.* ¶ 24.) JL was listed as the buyer of the Business. (Ex. B. JL & Lench Mot. Dismiss 1, ECF No. 33-4.)[6] On February 17, 2022, Greenberg sent Nicholas Pools' attorney, Philip G. Mylod, Esquire ("Attorney Mylod") an email with an offer for the Business. (*Id.* ¶ 27.) The offer reaffirmed the $2,000,000 purchase price, but changed the purchaser of the business from JL to Kurlander.[7] (*Id.* ¶ 28.) Kurlander is one of the Buyers listed in the TPC. (*Id.* ¶¶ 10, 28.)

Between December 2021 and May 2022, Nicholas Pools opened their books to Third-Party Defendants while negotiations were ongoing. (*Id.* ¶ 22.) On March 3, 2022, parties[8] met and

---

[5] This alleged agreement by Lench occurred before Kurlander became the proposed purchaser of the Business during negotiations. (*See* TPC ¶¶ 23, 28.)

[6] The Court considers the LOI attached as an exhibit to JL and Lench's motion to dismiss at this stage because Nicholas Pools relies on it in the TPC. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) ("[A] district court may examine an 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993))); *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 412 n.2 (D.N.J. 2021) (considering a contract attached to motion to dismiss as "integral to or explicitly relied upon in the complaint" (quoting *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020))).

[7] While Kurlander is the only party alleged to have been named as the purchaser of the Business, Nicholas Pools refers to Ocean, Gelbwachs, and Kurlander collectively as the "Buyers." (TPC ¶¶ 10, 28.) The Court, accordingly, also refers to Ocean, Gelbwachs, and Kurlander collectively as the "Buyers."

[8] It is not clear from the TPC what "parties" were at this meeting, i.e., the Buyers, Lench, Greenberg, other Third-Party Defendants, etc. (*See* TPC ¶ 32.)

discussed the terms of sale based upon a $2,000,000 net purchase price for the Business. (*Id.* ¶ 32.) Jeffrey Folger, Esquire ("Attorney Folger") represented the Buyers in the sale of the Business. (*Id.* ¶ 31.) On March 9, 2022, Attorney Folger drafted a 31-page Asset Purchase Agreement ("APA"). (*Id.* ¶ 33.) In pertinent part, the APA reads "[t]he aggregate purchase price for the [purchased Business assets] shall be an amount equal to $2,000,000 . . . plus the assumption of the Assumed Liabilities." (*Id.*) This initial APA did not include any cap on the Assumed Liabilities. (*Id.* ¶ 34.)

On March 17, 2022, Nicholas Pools disclosed to the Buyers that it owed approximately $500,000 in debt to SCP by April 1, 2022, plus outstanding liens on trucks and equipment estimated at $200,000. (*Id.* ¶ 36.) This disclosure was sent, in part, to both Greenberg and Lench. (*Id.* ¶ 37.) On April 25, 2022, Ms. Sergiou again informed the Buyers that amounts were owed to SCP totaling approximately $500,000. (*Id.* ¶ 47.)

On April 27, 2022, the Buyers delayed closing to complete certain paperwork. (*Id.* ¶ 60.) On May 1, 2022, Greenberg told Ms. Sergiou in regard to the delay that the Buyers "are just trying to make sure that [we] take over your liabilities properly and that you should [not] be responsible for them." (*Id.* ¶ 64.)

On May 23, 2022, with closing imminent, the Buyers emailed Nicholas Pools significant proposed revisions to the APA.[9] (*Id.* ¶ 66.) References to the $500,000 owed SCP were redlined for omission. (*Id.* ¶ 67.) The revised APA also contained a $300,000 cap on the Assumed Liabilities. (*Id.* ¶ 68.) This revised APA was attached to an email with five other documents and the email did not mention that alterations were made to the Assumed Liabilities provisions within

---

[9] In the same email with the revised APA, an attorney for the Buyers also noted that Ms. Sergiou and Greenberg talked about finalizing the APA. (TPC ¶¶ 66, 72.) Nicholas Pools alleges that no such discussion took place. (*Id.* at 72.)

5

the APA. (*Id.* ¶ 69.) Prior to these changes to the APA, none of the parties ever discussed a cap on the Assumed Liabilities. (*Id.* ¶ 70.)

## II. JURISDICTION

The Court has diversity jurisdiction over the claims herein pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states, and the amount of controversy exceeds $75,000, exclusive of interests and costs.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[10] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On

---

[10] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

6

a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Where pleading fraud, the plaintiff "must meet a heightened pleading standard under [Rule] 9(b)." *Zuniga v. Am. Home Mortg.*, No 14-2973, 2016 WL 6647932, at *2 (D.N.J. Nov. 8, 2016). "In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b). "A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

### IV. DISCUSSION

Nicholas Pools brings two subsets of claims against JL, Lench, and Greenberg: fraud claims and quasi-contractual claims. (TPC ¶¶ 140–41, 171–86.) A lack of clarity as to the various contractual relationships between the parties mentioned in the TPC and which contracts governed those various relationships, however, renders both subsets incapable of defeating JL, Lench, and Greenberg's motions to dismiss. These deficiencies are outlined in greater detail below.

#### A. Nicholas Pools' Fraud Claim (Count Four)

The Court dismisses Nicholas Pools' fraud claims without prejudice. "The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Rao v. Anderson Ludgate Consulting, LLC*, Civ. No. 15-3126, 2016 WL 3647998, at *2 (D.N.J. July 7, 2016) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367-68 (N.J. 1997). Common-law

fraud claims are subject to the Rule 9(b) heightened pleading standard. *Quality Eye Assocs., LLC v. ECL Grp., LLC*, Civ. No. 22-2489, 2023 WL 2583508, at *3 (D.N.J. Mar. 20, 2023) (citing *Frederico v. Home Depot*, 507 F.3d 188, 199, 202 (3d Cir. 2007)).

As an initial matter, it is unclear what theory of fraud Nicholas Pools alleges against JL, Lench, and Greenberg: fraud in the inducement, fraud in the performance of a contract, or both. (*See generally* TPC; Nicholas Pools' Opp'n Br.) This is an important distinction in adjudicating the instant motions because typically fraud in the inducement claims can subvert the "economic loss" doctrine, which bars tort actions stemming from contract disputes, whereas fraud in the performance of a contract claims are typically barred by the "economic loss" doctrine. *JD James Const., LLC v. PDP Landscaping, LLC*, App. No. A-4903-18T3, 2020 WL 5587439, at *6 (N.J. Super. Ct. App. Div. Sept. 18, 2020) (noting that New Jersey courts typically only allow a fraud claim to proceed alongside a breach of contract claim where a party alleges fraud in the inducement of a contract, but not fraud in the performance of a contract) (citing *G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 593 (D.N.J. 2014)); *see also Jannarone v. Sunpower Corp.*, Civ. No. 18-9612, 2019 WL 4058981, at *8 (D.N.J. Aug. 28, 2019) ("The economic loss doctrine prohibits plaintiffs from recovering tort economic losses to which their entitlement only flows from a contract" (citation omitted)).

Here, it is unclear whether Nicholas Pools is alleging that JL, Lench, and/or Greenberg fraudulently induced Nicholas Pools to contract with the Buyers, or if it is alleging that JL, Lench, and/or Greenberg perpetrated a fraud by fraudulently manipulating the APA. (*Compare* TPC ¶ 14 (alleging that Lench "induced" the Sergious to sell the Business but not mentioning JL) *and* ¶ 141 (alleging that Third-Party Defendants collectively "induced" Nicholas Pools to sell the Business) *with* Nicholas Pools' Opp'n Br. 8–10 (suggesting Greenberg may have altered the APA, without informing Nicholas Pools, to allow the Buyers to avoid certain liabilities and not suggesting

8

Greenberg induced the Sergious to sell the Business) *and* TPC ¶ 37 (alleging that during negotiations Lench became aware that Assumed Liabilities were owed to SCP, suggesting that Lench was active during contract negotiations and may have sought to omit the Assumed Liabilities from the APA).) Insofar as the applicability of the economic loss doctrine turns on this distinction, JL, Lench, and Greenberg's motions to dismiss the fraud claims against them must be granted so that Nicholas Pools can clarify their theories of fraud against JL, Lench, and Greenberg.

Separately, the Court finds that Nicholas Pools failed to meet Rule 9(b) pleading standards. Vague group pleadings are impermissible where those group pleadings "lump several defendants together without setting forth what each particular defendant is alleged to have done." *Yu-Chin Chang v. Upright Fin. Corp*, Civ. No. 19-18414, 2020 WL 473649, at *3 (D.N.J. Jan. 28, 2020) (citation omitted) (applying this rule under Rule 8(a)'s more lenient pleading standard); *U.S. ex rel. Moore* 812 F.3d at 307 (finding that under Rule 9(b) a "plaintiff alleging fraud must . . . support its allegations with . . . the who, what, when, where and how of the events at issue." (internal quotation marks omitted)). Many of Nicholas Pools' fraud allegations against JL, Lench, and Greenberg are impermissibly vague because the allegations refer generally to "Third-Party Defendants" as committing fraudulent acts, without specifying which Third-Party Defendants are responsible for which fraudulent behavior. (*See, e.g.,* TPC ¶ 141 ("Third-Party Defendants falsely represented the fact that they would purchase the business at net $2 [million dollars.]").)[11]

---

[11] The Court also notes that at times Nicholas Pools makes allegations such as Lench "induced" the Sergious to sell the Business. (TPC ¶ 14.) This allegation is conclusory in that in merely states that Lench wanted to enter into a contract with the Sergious. There is no later allegation that Lench himself acted in a fraudulent manner in seeking to enter into the contract. (*See generally id.*) The only allegations affirmatively alleging fraud group all Third-Party Defendants together, and do not separate out who is alleged to have done what. (TPC ¶¶ 140–41.) This type of group pleading is particularly problematic where it is unclear what the relationships are between the Third-Party Defendants, i.e. whether Lench acted as an agent of JL, and what JL's relationship to the Buyers was.

Moreover, Nicholas Pools' lack of clarity as to the relationships between the various Third-Party Defendants (*i.e.*, JL and Lench, JL and the Buyers, Greenberg and JL etc.), renders it impossible for the Court to assess which individual Third-Party Defendant is alleged to have done what fraudulent behavior. Even if Nicholas Pools appropriately differentiated between "who" specifically engaged in fraudulent behavior, the TPC lacks any adequate allegation that any Third-Party Defendant had knowledge of any false representations or fraudulent behavior. (*See generally* TPC.) For these reasons, Nicholas Pools' fraud claims fail to meet the Rule 9(b) heightened pleading standard. Accordingly, JL, Lench, and Greenberg's motions to dismiss Count Four will be granted. Count Four will be dismissed without prejudice.

      B.      **Nicholas Pools' Quasi-Contractual Claims (Counts Six and Seven)**

Nicholas Pools also brings two counts against JL, Lench, and/or Greenberg sounding in quasi-contract: promissory estoppel and unjust enrichment. (TPC ¶¶ 171–86; *Berrada v. Cohen*, Civ. No. 16-574, 2018 WL 4629569, at *5 (D.N.J. Sept. 27, 2018) (noting that unjust enrichment and promissory estoppel claims are both quasi-contractual theories).) Importantly, Nicholas Pools' lack of clarity as to the various contractual relationships alleged in the TPC renders it impossible for the Court to assess whether Nicholas Pools can sustain quasi-contractual claims.

"[W]here there is an express contract covering the identical subject matter of [a quasi-contract] claim, [a] plaintiff cannot pursue [that] quasi-contractual claim." *All Seasons Home Improvement Co. v. Arch Concept Constr., Inc.*, Civ. No. 16-0751, 2018 WL 3928787, at *8 (D.N.J. Aug. 16, 2018) (quoting *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000)).

> It is a well settled rule that an express contract excludes an implied one. An implied contract cannot exist when there is an existing express contract about the identical subject. The parties are bound by their agreement, and there is no ground for implying a promise.

10

> It is only when the parties do not agree that the law interposes and raises a promise[, forming the basis of a quasi-contract claim.]

*Moser v. Milner Hotels, Inc.* 78 A.2d 393, 394 (N.J. 1951) (internal quotations marks and citations omitted). As such, where express contracts exist concerning the same subject matter alleged in a quasi-contract claim, the quasi-contractual claim can only move forward as an alternative to a breach of contract claim where the enforceability of the express contract is at issue. *See Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 259 (D.N.J. 2020) (citation omitted).

First, Nicholas Pools makes mention of at least three potential express contracts that may govern the purchase of the Business: Lench's promise to purchase the Business, a promissory note, and the APA. (TPC ¶ 14 (alleging "it was agreed that Lench would purchase [the Business] for a net of $2[,000,000] and assume all liabilities."); ¶ 23 (alleging that Lench agreed to essential terms for the purchase of the Business as evidenced by a "promissory note"); ¶ 28 (alleging that on February 17, 2022 Greenberg sent a renewed proposal to purchase the Business which made Kurlander the Buyer instead of JL); ¶ 32 (noting that the Buyers and Nicholas Pools, but making no mention of JL, Lench, or Greenberg, discussed "terms based upon a $2[,000,000] net purchase price [and] [i]t was agreed that [the Buyer's attorney] would prepare the [APA].") Importantly, neither Nicholas Pools' nor any Third-Party Defendant appears to dispute the enforceability of any contract. (*See generally* TPC; JL & Lench Mot. Dismiss; Greenberg Mot. Dismiss, ECF No. 35-3.) This is true despite allegations that several express contracts existed between JL,[12] the Buyers, and

---

[12] The Court notes that quasi-contractual claims may not be feasible against Lench or Greenberg because Nicholas Pools in their briefing suggests that Lench and Greenberg are agents making promises on behalf of their corporate principals. (Nicholas Pools' Opp'n Br. 6–8 (stating, in part, that "Greenberg and Lench worked together under a business identified as JL."); 10 (stating that Greenberg, like Lench, "is acting as an agent at best, or a silent partner for . . . Ocean).) If this is Nicholas Pools' theory, then Greenberg and Lench would not be liable for any promises they made on behalf of their principal. *BH 329 NB LLC v. CBRE, Inc.*, Civ. No. 16-8141, 2017 WL 3641566, (D.N.J. Aug. 24, 2017) ("Generally when an agent enters into a contract on behalf of its disclosed principal, it is the principal, not the agent, who is bound by the contract." (citation omitted)). As

Nicholas Pools. As such, due to the alleged existence of express contracts that govern the same subject matter alleged in the quasi-contractual claims,[13] Nicholas Pools' Counts Six and Seven must be dismissed as it is unclear how a quasi-contractual claim can advance on the facts alleged. The counts, however, will be dismissed without prejudice to give Nicholas Pools an opportunity to clarify its theories.

### C.  SCP's Motion for Severance or Bifurcation

Finally, SCP moves under Rule 21 to sever or bifurcate Nicholas Pools' claims. (SCP's Moving Br. 4, ECF No. 42-2.) "Severing claims under Rule 21 is appropriate where the claims to be severed are discrete and separate in that one claim is capable of resolution despite the outcome of the other claim." *AIG Spec. Ins. Co. v. Thermo Fischer Sci.*, Civ. No. 20-13046, 2021 WL 2680013, at *4-5 (D.N.J. June 29, 2021) (citation omitted). "A district court has broad discretion in deciding whether to sever a party or claim pursuant to Rule 21." *Picozzi v. Connor*, Civ No. 12-4102, 2012 WL 2839820, at *5 (D.N.J. July 9, 2012). "Although Rule 21 is most commonly

---

such, any quasi-contractual relationship entered into by Greenberg or Lench presumedly binds their principal, but not necessarily them individually as agents, unless Nicholas Pools can show otherwise through relevant case law and analysis. *See, e.g.*, *Myers v. Alutiiq Intern. Sols., LLC*, 811 F. Supp. 2d 261, 273 (D.D.C. 2011) (providing an example of a court finding that a quasi-contractual claim was not sustainable against an agent where and finding that courts across the United States have held, for example, that a "promissory estoppel claim cannot be brought against agents who were acting on behalf of their principal at the time [a] promise was made." (collecting cases)).

[13] To be clear, Count Six, Nicholas Pools' promissory estoppel claim, alleges that "[t]he Third-Party Defendants repeatedly made clear and definite promises that they were purchasing Nicholas Pools for a net of [$2,000,000]." Moreover, all allegations in Count Seven, Nicholas Pools' unjust enrichment claim, pertains to the Assumed Liabilities in the APA. (TPC ¶¶ 178, 184.) These allegations all pertain to the APA, an express contract between the Buyers and Nicholas Pools. As such, the Court is not persuaded that any quasi-contractual allegations can advance against any Third-Party Defendant. This includes JL, Lench, and Greenberg because the promises they were alleged to have made, i.e. that they would pay $2,000,000 for the Business and assume all liabilities, are the same promises contained and memorialized in the APA.

invoked to sever parties improperly joined under Rule 20, 'the Rule may also be invoked to prevent prejudice or promote judicial efficiency." *Id.* (quoting *Lopez v. City of Irvington*, Civ No. 05-5323, 2008 WL 565776, at *2 (D.N.J. Feb. 28, 2008)); *see also Stahl v. Ohio River Co.*, 424 F.2d 52, 55 n.3 (3d Cir. 1970) (supporting this interpretation of Rule 21). When considering severance under these circumstances, the Court considers:

> (1) whether the issues sought to be tried separately are significantly different from one another[;] (2) whether the separable issues require the testimony of different witnesses and different documentary proof[;] (3) whether the party opposing the severance will be prejudiced if it is granted[;] and (4) whether the party requesting severance will be prejudiced if it is not granted.

*Picozzi*, 2012 WL 2839820, at *6 (citation omitted).

Rule 42(b), on the other hand, allows the court to order "a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" "[f]or convenience, to avoid prejudice, or to expedite and economize" a case. Fed. R. Civ. P. 42(b). "Bifurcation 'is appropriate where claims are factually intertwined, such that a separate trial may be appropriate, but final resolution of one claim affects the resolution of the other." *Toll JM EB Residential Urban Renewal LLC v. Tocci Residential, LLC*, Civ. No. 16-5422, 2023 WL 3510877, at *3 (D.N.J. May 16, 2023) (quoting *Est. of Grieco by Grieco v. Nat'l Med. Consultants, P.C.*, Civ. No. 16-1959, 2021 WL 1248533, at *5 (D.N.J. Apr. 5, 2021)). "Courts weigh the same four factors in deciding a motion to sever under Rule 21 and a motion to bifurcate under Rule 42(b). *Id.* (citations omitted).

At this early stage in the litigation, the Court is unpersuaded that a severance or bifurcation of claims is necessary. This is because SCP's concerns that lead it to seek a severance may be of no moment. Specifically, it is unclear at this time which of Nicholas Pools' claims, if any, will proceed past the pleading stage or if subsequent motions to dismiss will limit the complexity and scale of the third-party claims. Thus, SCP's motion is denied, though the Court is amenable to

13

revisiting this issue if both the Complaint and TPC survive the pleading stage and it becomes clear that a severance or bifurcation is prudent.

## V.     CONCLUSION

For the reasons outlined above, JL, Lench, and Greenberg's Motions to Dismiss will be granted, and SCP's Motion to Sever or Bifurcate third-party claims will be denied.  An appropriate Order will follow.

Date: September 18, 2023

s/Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
