**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SCP DISTRIBUTORS, LLC,** | |
| Plaintiff, | Civil Action No. 22-6721 (ZNQ) (RLS) |
| v. | **OPINION** |
| **NICHOLAS POOLS INC.**, *et al.*, | |
| Defendants. | |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon Third-Party Defendants JL Commercial Real Estate LLC's ("JL") and Jack Lench's ("Lench") Motion to Dismiss ("JL and Lench Motion", ECF No. 67) and Third-Party Defendant Sarah Greenberg's ("Greenberg") Motion to Dismiss ("Greenberg Motion", ECF No. 68) the First Amended Third-Party Complaint (ECF No. 64). Defendants and Third-Party Plaintiffs Nicholas Pools, Inc. (the "Business"), Sotiris Sergiou ("Mr. Sergiou"), and Theodora Sergiou ("Ms. Sergiou") (together, the "Sergious"), (collectively, "Third-Party Plaintiffs" or "Nicholas Pools") opposed both Motions ("Opp'n", ECF No. 77), JL and Lench replied ("JL & Lench Reply", ECF No. 81), and Greenberg replied ("Greenberg Reply", ECF No. 85). After careful consideration of the parties' submissions, the Court decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, JL's and Lench's Motion (ECF No. 67) will be **GRANTED** and Greenberg's Motion (ECF No. 68) will be **GRANTED**. The First Amended Third-Party

Complaint (Counts Four, Five, and Nine) as to JL, Lench, and Greenberg will be **DISMISSED WITHOUT PREJUDICE**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A. Procedural Background[1]

On November 22, 2022, Plaintiff SCP Distributors LLC ("Plaintiff" or "SCP") filed a Complaint in this Court against Nicholas Pools alleging various breach of contract claims stemming from the alleged breach of a Credit/Business Application and Agreement (the "SCP Agreement").  (Compl. ¶¶ 7, 1–43, ECF No. 1; *see generally* "SCP Agreement", ECF No. 1-1.) SCP alleges that under the SCP Agreement, Nicholas Pools agreed to purchase certain pool supplies and equipment.  (Compl. ¶ 7; *see generally* SCP Agreement.)  In exchange for SCP's agreement to sell supplies to Nicholas Pools, the Sergious executed and delivered to SCP a personal guarantee to pay any of Nicholas Pools' outstanding obligations to SCP.  (Compl. ¶ 8.) As of October 28, 2022, SCP alleges Nicholas Pools has failed to pay $332,970.70 under the SCP Agreement for the purchase of supplies from SCP.  (*Id.* ¶¶ 11–13.)  SCP brought its Complaint in this matter to collect that sum.  (*See generally id.*)

On January 25, 2023, Nicholas Pools filed a Third-Party Complaint ("TPC") against JL, Lench, Ocean Pools & Spas Corp. ("Ocean"), Nissan Gelbwachs ("Gelbwachs"), Dov Kurlander ("Kurlander"), and Greenberg (collectively, "Third-Party Defendants").  (ECF No. 9.)  The Court, in its Prior Opinion dated September 19, 2023, dismissed the TPC without prejudice.  (*See* "Prior Op.", ECF No. 57.)  On October 18, 2023, Nicholas Pools filed the operative First Amended Third-Party Complaint.  ("FATPC", ECF No. 64.)  The FATPC, like the TPC, alleges that Third-Party

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the First Amended Third-Party Complaint as true.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  The parties are familiar with the factual and procedural history of this matter and therefore the Court recites only those facts necessary to resolve the instant Motion.

Defendants are liable for the debt Nicholas Pools accrued to SCP because Third-Party Defendants assumed Nicholas Pools' SCP liabilities after purchasing the Business.  (*See generally id.*)

In the FATPC, Nicholas Pools brings eleven counts against Third-Party Defendants.  (*See generally id.*)  Only three of Nicholas Pools' eight claims, however, specifically implicate JL, Lench, and/or Greenberg: (4) Common-Law Fraud in the Inducement (Lench & JL) ("Count Four"); (5) Common-Law Fraud in the Inducement (Greenberg & JL) ("Count Five"); and (9) Unjust Enrichment (Ocean, Kurlander, Gelbwachs, Greenberg, Lench & JL) ("Count Nine").  As such, the Court recites only the facts necessary to contextualize and resolve the motions to dismiss these three claims against the movants.

### B.  Factual Background

On October 27, 2021, Lench, a managing member of JL, met with the Sergious and Ms. Sergiou's father, Nicholas Christofi ("Christofi"), to discuss whether the Sergious and Christofi would be interested in selling their pool Business and the building it occupied, located at 1820 Lakewood Road, Toms River, New Jersey.  (*Id.* ¶¶ 5, 13, 15.)

About a month later, on November 24, 2021, the Sergious again met with Lench to discuss the sale of the Business.  (*Id.* ¶ 17.)  Lench, through JL, agreed to purchase the Business for $2,000,000 and to assume the liabilities (the "Assumed Liabilities") of the Business.  (*Id.*)  On February 4, 2022, Lench presented a Letter of Intent ("LOI") for the sale of the Business, which listed JL as the buyer and Lench as the principal.  (*Id.* ¶ 24.)  The parties agreed on the essential terms of sale, with Lench agreeing to pay $1,400,000 down and $600,000 payable in twelve monthly installments of $50,000.  (*Id.* ¶ 25.)  These payments were evidenced by a promissory note.  (*Id.*)  The LOI did not reference any cap on the Assumed Liabilities.  (*Id.*)

On February 7, 2022, Lench, Mr. Sergiou, and Ms. Sergiou executed the LOI.  (*Id.* ¶ 26.) JL was listed as the buyer of the Business and Lench was listed as the principal.  (*See* LOI, ECF No. 67-4 Ex. B at 1.)[2]  The same day, JL contracted with Christofi to purchase 1820 Lakewood Road; the contract included a contingency that conditioned the real estate sale on the sale and closing of the Business.  (FATPC ¶ 30.)  On February 17, 2022, Lench sent an email—signed by himself and Greenberg purportedly on behalf of JL—to Nicholas Pools, attaching a letter ("the Term Sheet") dated February 16, 2022.  (*Id.* ¶¶ 46–47.)  The Term Sheet reaffirmed the $2,000,000 purchase price, but changed the purchaser of the Business from JL to Kurlander.[3]  (*Id.* ¶ 53.)  The Term Sheet named Lench and Kurlander as signatories, but was never executed by any party.  (*Id.* ¶¶ 50–51.)  Sometime in February 2022, Lench assigned the real estate contract to purchase 1820 Lakewood Road to Kurlander for the sum of $1,000,000.  (*Id.* ¶¶ 31, 204.)  The assignment contained a due diligence clause stating that Lench would receive a non-refundable release of $200,000 of the deposit once Kurlander, the "assignee," closed on the pool business, and that Lench would receive the remaining $800,000 upon the closing of the real estate contract.  (*Id.* ¶¶ 32–33.)  JL "remained listed as the Buyer of the real estate on the contract up until closing, when ultimately, a company known as 1820 Route 9 LLC became the successor in interest."  (*Id.* ¶ 54.)

---

[2] The Court considers the Agreement of Sale for 1820 Lakewood Road (ECF No. 67-3 Ex. A), the LOI (ECF No. 67-4 Ex. B at 1), and the Assignment of Contract for the real estate purchase to Kurlander ("Assignment", ECF No. 67-5 Ex. C) attached as exhibits to JL and Lench's Motion to Dismiss at this stage because Nicholas Pools relies on them in the FATPC.  *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) ("[A] district court may examine an 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'") (citation omitted); *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 412 n.2 (D.N.J. 2021) (considering a contract attached to motion to dismiss as "integral to or explicitly relied upon in the complaint") (quoting *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020))).

[3] Although Kurlander is the only party alleged to have been named as the purchaser of the Business, Nicholas Pools refers to Ocean (an entity created for the purchase of Nicholas Pools), Gelbwachs, and Kurlander collectively as the "Buyers."  (*Id.* ¶¶ 10, 45, 53.)  The Court, accordingly, also refers to Ocean, Gelbwachs, and Kurlander collectively as the "Buyers."  However, at other times the FATPC also identifies "Ocean" as the sole "Buyer."  (*Id.* ¶ 10.)  This conflation may stem from the record showing that Ocean was listed as "the Buyer" in the APA, but Kurlander and Gelbwachs signed the APA on behalf of the purchasing entity, Ocean.  (*See generally* APA, ECF No. 35-4 Ex. 1).)

Between December 2021 and May 2022, Nicholas Pools opened their books to Third-Party Defendants, including Lench and Greenberg, while negotiations were ongoing.  (*Id.* ¶ 44.)  On March 3, 2022, parties including Lench and Greenberg met and discussed the terms of sale based upon a $2,000,000 net purchase price for the Business.  (*Id.* ¶ 58.)  Attorneys Jeffrey Folger, Esquire ("Attorney Folger"), Michael Roberts, Esquire ("Attorney Roberts"), and Mariel Giletto, Esquire ("Attorney Giletto") at various times represented the Buyers in the sale of the Business and Philip G. Mylod, Esquire (hereinafter "Attorney Mylod") represented the Sellers.[4]  (*Id.* ¶¶ 55, 91.)  On March 9, 2022, Attorney Folger drafted a 31-page Asset Purchase Agreement ("APA").  (*Id.* ¶ 61.)  In pertinent part, the APA reads "[t]he aggregate purchase price for the [purchased Business assets] shall be an amount equal to $2,000,000 . . . plus the assumption of the Assumed Liabilities."  (*Id.*)  This initial APA did not include any cap on the Assumed Liabilities.  (*Id.* ¶ 62.)

On March 17, 2022, Nicholas Pools disclosed to the Buyers that it owed approximately $500,000 in debt to SCP due by April 1, 2022, plus outstanding liens on trucks and equipment estimated at $200,000.  (*Id.* ¶ 65.)  This disclosure was sent, in part, to both Greenberg and Lench.  (*Id.* ¶ 66.)  On March 31, 2022, Ocean was formed as a corporation that would be the purchasing agent of the Business.  (*Id.* ¶ 37.)  On April 25, 2022, Ms. Sergiou again informed the Buyers that Nicholas Pools owed to SCP amounts totaling approximately $500,000.  (*Id.* ¶ 89.)  On April 26, 2022, Attorney Mylod sent to the Buyers a number of schedules including Schedule 1.3, "Assumed Liabilities," which listed the SPC debt as "approximately $500,000" and provided a list of vendors, maintenance, and utilities to be assumed as liabilities by the Buyers.  (*Id.* ¶ 90.)  On April 27, 2022, the Buyers delayed closing to complete certain paperwork including a bulk sale form which was to list the Assumed Liabilities.  (*Id.* ¶ 100.)  On May 1, 2022, Greenberg texted Ms. Sergiou in

---

[4] The FATPC names Nicholas Pools, Mr. Sergiou, and Ms. Sergiou as the "Sellers."  (*Id.* ¶ 11.)  The Court, accordingly, also refers to Nicholas Pools, Mr. Sergiou, and Ms. Sergiou as the "Sellers."

regard to the delay: "We are just trying to make sure that we take over your liabilities properly and that you shouldn't be responsible for them." (*Id.* ¶ 105.)

On May 23, 2022, with closing imminent, Attorney Giletto emailed Nicholas Pools significant proposed revisions to the APA, including 21 pages of schedules. (*Id.* ¶¶ 116–119.) Schedule 1.3 ("Assumed Liabilities") was redlined to delete the references to the $500,000 owed to SCP and to delete the vendor contracts as assumed liabilities. (*Id.* ¶ 117.) Schedule 1.3 also contained a $300,000 cap on the Assumed Liabilities. (*Id.* ¶ 118.) This revised APA was attached to an email with five other documents and the email did not mention that alterations were made to the Assumed Liabilities provisions within the APA. (*Id.* ¶ 119.) Prior to these changes to the APA, none of the parties ever discussed a cap on the Assumed Liabilities. (*Id.* ¶ 120.) On May 25, 2022, Sellers signed a number of closing documents including Schedule 1.3. (*Id.* ¶¶ 149–50.)

Post-closing, Nicholas Pools kept its credit accounts open and allowed Ocean to use its credit accounts until Buyers could set up their own accounts, incurring additional liabilities of $32,000, bringing the total liabilities to over $500,000. (*Id.* ¶¶ 153–55, 159.) Ocean subsequently did not pay Nicholas Pools' credit account balance, with Third-Party Defendants sending a letter to Nicholas Pools referencing the $300,000 cap on Assumed Liabilities in Schedule 1.3. (*Id.* ¶¶ 169, 211.) Accordingly, Nicholas Pools received reduced net proceeds from the sale of the Business. (*Id.* ¶¶ 155, 165, 173.)

## II.   <u>JURISDICTION</u>

The Court exercises its ancillary jurisdiction[5] over the third-party claims herein because diversity of citizenship exists between the original parties pursuant to 28 U.S.C. § 1332(a)(1) and the amount in controversy exceeds $75,000, exclusive of interest and costs.

---

[5] The Third Circuit has endorsed the notion that a "defendant's claim against a third-party defendant is within the ancillary jurisdiction of the federal courts. Thus, there need be no independent jurisdictional basis for such a claim if

III.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). District courts conduct a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  First, the court "must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted).  In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).  A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).  "The defendant bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages*, 926 F.2d at 1409).

diversity of citizenship exists between the original parties."  *Field v. Volkswagenwerk AG*, 626 F.2d 293, 299 (3d Cir. 1980) (quoting 6 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1444 at 223 (collecting cases))).

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Where pleading fraud, the plaintiff "must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b)" ("Rule 9(b)").  *Zuniga v. Am. Home Mortg.*, No 14-2973, 2016 WL 6647932, at *2 (D.N.J. Nov. 8, 2016).  "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud."  *See* Fed. R. Civ. P. 9(b); *accord Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004).  A plaintiff alleging fraud must support its allegations "with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)); *see also S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 280 (D.N.J. 2007) ("[A] plaintiff may not rely merely on conclusory statements," but must instead "indicate at the very least who made the material representation giving rise to the claim and what specific representations were made[.]").  As such, even a complaint that survives a Rule 12(b)(6) motion to dismiss can fail under Rule 9(b).  *See In re Rockefeller*, 311 F.3d at 224.

## IV.   DISCUSSION

Nicholas Pools brings two subsets of claims against JL, Lench, and Greenberg: (1) common law fraud in the inducement claims and (2) quasi-contractual claims for unjust enrichment.  (*See*

FATPC ¶¶ 201–20, 221–42.)   Although Nicholas Pools has attempted to clarify some of the allegations and contractual relationships the Court stated in its Prior Opinion were unclear (*see* Prior Op. at 7–8), the claims are once again incapable of defeating the instant Motions to Dismiss.

### A.   THE COMMON LAW FRAUD IN THE INDUCEMENT CLAIMS (COUNTS FOUR AND FIVE) CANNOT SUCCEED

"The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Rao v. Anderson Ludgate Consulting, LLC*, Civ. No. 15-3126, 2016 WL 3647998, at *2 (D.N.J. July 7, 2016) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367-68 (N.J. 1997)).   Common-law fraud claims are subject to the Rule 9(b) heightened pleading standard. *Quality Eye Assocs., LLC v. ECL Grp., LLC*, Civ. No. 22-2489, 2023 WL 2583508, at *3 (D.N.J. Mar. 20, 2023) (citing *Frederico v. Home Depot*, 507 F.3d 188, 199, 202 (3d Cir. 2007)).

#### 1.   Count Four (Lench & JL)[6]

In Count Four, the FATPC alleges the following: that Lench, on behalf of JL, falsely "held himself out as a principal buyer" of the Business "or as a princip[al] of the entity which was ultimately created to purchase said [B]usiness, namely, OP" (FATPC ¶ 203); that in February 2022, after assigning the real estate contract to Kurlander, Lench was "effectively acting on Kurlander's behalf to induce" Nicholas Pools to sell their business to Kurlander or OP (*id.* ¶ 204), and that he "used his position of trust and confidence" to do so (*id.* ¶¶ 205–06); that the Sergious "reasonably believed" Lench was a principal of OP (*id.* ¶ 207) and changed their position in

---

[6] In addressing Counts Four, Five, and Nine, the Court references earlier paragraphs in the FATPC because all earlier counts are incorporated by reference into the later counts and are helpful in resolving the Motions.  (*See generally id.*)

reliance upon the false representations (*id.* ¶ 219); that it was not until after closing that Lench disclosed he was not an actual partner or principal of OP but a "silent partner" (*id.* ¶¶ 208, 212; *see also id.* ¶ 168); and that Nicholas Pools suffered economic losses as a result of the alleged false representations. (*Id.* ¶¶ 220; *see also* Opp'n at 12.) JL and Lench argue they did not know of any false or misleading statements and that once Lench assigned the real estate contract to Kurlander, it was impossible for Lench to have made any knowingly false material statements upon which the Sellers could reasonably rely. ("JL & Lench Moving Br.", ECF No. 67-1 at 4, 6.)

The Court does not opine on whether Lench, on behalf of JL, made any misrepresentations because even if Nicholas Pools could show that Lench/JL misrepresented the terms of the sale including his status as a purchaser, the FATPC fails to adequately plead a crucial element of a fraud claim: that Nicholas Pools reasonably relied on the alleged misrepresentations. To satisfy the pleading standard for a fraud claim under New Jersey law,[7] reliance on material misrepresentations "must have been justifiable, for example, when facts to the contrary were not obvious or did not provide a warning making it patently unreasonable that plaintiff not pursue further investigation." *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 189 N.J. Super. 347, 355 (App. Div. 1983). The FATPC's assertion of "reasonabl[e] reli[ance]" (FATPC ¶ 218) is contradicted by the fact that Nicholas Pools finalized the sale of the Business in May 2022 and failed to raise any objections prior to the sale, even after receiving the Term Sheet proposal three months earlier which changed the purchaser from JL to Kurlander. (*Id.* ¶¶ 50–51, 53.) There are no allegations that Nicholas Pools conducted further diligence after February 17, 2022 to ascertain the identity of the Buyers, which could have alerted Nicholas Pools to the assignment of the real

---

[7] The Court applies the law of the State of New Jersey in resolving the parties' dispute. Although neither party raises the issue of choice of law, the application of New Jersey law here is consistent with the "Governing Law; Submission to Jurisdiction" provision of the APA. (*See* APA, ECF No. 35-4 Ex. 1 § 10.11.)

estate contract.  For similar reasons, the allegations that Lench "h[eld] himself out" as a Buyer after closing fail because Nicholas Pools had already finalized the Business sale transaction and was aware of the identity of the purchaser.  (*Id.* ¶ 209.)

Furthermore, the FATPC fails to plead with adequate particularity the content and timing of the alleged misrepresentations, which could speak to Lench's alleged knowledge of falsity. Nicholas Pools proffers that at the time Lench represented to the Sellers claiming he was a Buyer, he "had already assigned the real estate contract to Kurlander and knew of the falsity of his statements"; he "had no intention of buying either the real estate nor the pool business." (*Id.* ¶¶ 34, 217.)  However, the FATPC neglects to specify the content of Lench's alleged pre-closing misrepresentations—including statements in "oral conversations, emails, and written documents," and therefore cannot satisfy the pleading requirements of Rule 9(b).  (*Id.* ¶ 52.)

Additionally, the FATPC is unclear as to timing, and whether these alleged misrepresentations occurred prior to February 17, 2022, when Lench sent the Term Sheet to the Sellers changing the buyer of the Business from JL to Kurlander.  (*Id.* ¶¶ 50–51, 53; *see also* ECF No. 81-4 at 1.)  Without more information, it is plausible that Lench was still one of the listed purchasers on the documents pertaining to the sale of the Business at the time he stated he was a purchaser.  *See Luscko v. S. Container Corp.*, Civ. No. 06–3896, 2009 WL 5171868, at *4 (D.N.J. Dec. 23. 2009) (The "key factor" in fraud in the inducement to contract claims is that the alleged misstatement "must be a misrepresentation of a fact as it existed at the time of the misrepresentation or at some time prior to the misrepresentation.") (citation omitted).  The exact date of the assignment of the real estate contract is also unclear.  In one paragraph, the FATPC alleges that Lench assigned the contract on February 23, 2022 (*see* FATPC ¶ 31), but in Count Four the date of assignment is alleged to be February 7, 2022.  (*See id.* ¶ 204.)  Moreover, the

executed Assignment only contains the month and year of assignment, February 2022, and not the actual day.  (*See* Assignment at 1.)  Accordingly, the Court finds that the FATPC fails to plead a plausible claim for common law fraud against Lench and JL.

The Court notes other pleading defects that would benefit from greater clarity.  Nicholas Pools may wish to amend its pleading to clarify the relationship between Lench and Kurlander and whether Lench did not, in fact, have authority to act on Kurlander's behalf when he represented that he did.  (*See* Prior Op. at 9 n.11 (stating that the relationship between JL, Lench, and the Buyers in the TPC was unclear); FATPC ¶ 14 (alleging that at various times Lench was both an agent and principal of JL); *id.* ¶ 36 (alleging that from the moment Lench assigned the real estate contract to Kurlander, he was "operating as a front man and agent" of Kurlander but failing to mention whether he lacked authority to do so); *id.* ¶ 39 (alleging that Kurlander was a principal of Ocean but failing to mention Lench or JL).)  Nicholas Pools may also wish to clarify the extent of Lench's knowledge of his own or another Third-Party Defendant's alleged fraudulent misrepresentations (*see* Prior Op. at 10), as well as Lench's alleged intent that the Buyers rely on his statements.  (*See id.* at 9 n.11 (finding that a mere allegation of inducement in the TPC "is conclusory as it merely states that Lench wanted to enter into a contract with the Sergious.  There is no later allegation that Lench himself acted in a fraudulent manner in seeking to enter into the contract."); FATPC ¶¶ 205, 214 (pleading conclusory allegations that Lench used his position of trust to "induce" the Sergious to sell the Business so that he would receive the $1,000,000 assignment fee).)  Accordingly, Count Four will be **DISMISSED WITHOUT PREJUDICE**.

### 2.  Count Five (Greenberg & JL)

The Court has already discussed the pleading defects in the fraud claim against Lench and JL.  Therefore, the discussion of Count Five will focus only on the allegations against Greenberg,

who the FATPC alleges was a principal of JL and acted under its apparent authority.  (*See* FATPC ¶¶ 222, 224.)  In Count Five, Nicholas Pools alleges that Greenberg (i) "purposefully failed to disclose that JL[ ] assigned the pool contract to Kurlander for the sum of $1,000,000" (FATPC ¶ 227) and (ii) "represented numerous times to Sellers that the Buyers would pay a net $2[,000,000] and assume all liabilities[.]"  (*Id.* ¶ 228).  Regarding the latter allegation, Nicholas Pools alleges that it "is verily believed that Greenberg unilaterally modified Schedule 1.3 by deleting all assumed contracts and inserting a $300,000.00 cap on assumed liabilities or that she directed Attorney Giletto to insert the cap." [8]  (*Id.* ¶¶ 233–34.)  As to JL, Nicholas Pools alleges that Greenberg was a principal of JL and acting with "apparent authority on behalf of" JL and Ocean, and that "[a]s of February . . . 2022, JL[ ], having assigned the real estate contract to Kurlander, was effectively acting on Kurlander's behalf to induce Third-Party Plaintiffs to sell their pool business."  (*Id.* ¶¶ 222–26.)  Greenberg argues that the FATPC fails to allege with adequate particularity the circumstances of the alleged fraud and fails to allege that she knew Lench's status as a purchaser was material to the Sellers.  (*See* Greenberg Moving Br. at 5–6.)  JL and Lench argue that the FATPC fails to allege Greenberg was acting on their behalf when she made the alleged misstatements.  (*See* JL & Lench Moving Br. at 6–7.)

Count Five fails to state a claim of fraud as to Greenberg (and therefore cannot state a claim against JL, to the extent it alleges Greenberg acted on JL's behalf).  Greenberg's alleged misstatements arise from a May 1, 2022 text message from Greenberg to Ms. Sergiou in which Greenberg states: "We are just trying to make sure that we take over your liabilities properly and

---

[8] Nicholas Pools acknowledges that had Greenberg been involved in unilaterally changing Schedule 1.3, this would constitute "fraud in fact" and not fraud in the inducement.  (*See* Prior Op. at 8, noting that "New Jersey courts typically only allow a fraud claim to proceed alongside a breach of contract claim where a party alleges fraud in the inducement of a contract, but not fraud in the performance of a contract[.]" (citations omitted).)  Nicholas Pools, however, claims that the "gravamen" of its allegations is Greenberg's "representation to the sellers which induced the sale of the business premised upon a net $2 million deal with Lench as the trusted buyer."  (Opp'n at 13 n.4.)

that you shouldn't be responsible for them." (*Id.* ¶ 232.)   Nicholas Pools infers from this communication that Greenberg was confirming the Buyers had agreed to assume *all* of the Business's liabilities.   (Opp'n at 11–12.)   However, even if Greenberg's text could be interpreted to make this commitment, such a statement fails to satisfy the requirements of a fraud claim because any commitment to assume the Business's liabilities sometime in the future is not a misrepresentation of a past or present fact. *See Luscko*, 2009 WL 5171868, at *4 (D.N.J. Dec. 23, 2009).   In addition, the explicit writing of APA Schedule 1.3 overrides any commitment made prior to the signing of the APA.   (*See* APA, ECF No. 35-4 Ex. 1 Schedule 1.3.)

Moreover, even if the FATPC had plausibly articulated that Greenberg (or Lench) falsely promised the Buyers would assume all liabilities,[9] it has not plausibly alleged the Buyers reasonably relied on any of Greenberg's (or, for that matter, Lench's) statements.   As previously discussed, in the context of a fraud claim, reliance on material misrepresentations "must have been justifiable, for example, when facts to the contrary were not obvious or did not provide a warning making it patently unreasonable that plaintiff not pursue further investigation." *Nappe*, 189 N.J. Super. at 355 (App. Div. 1983); *see also Berman v. Gurwicz*, 189 N.J. Super. 89, 102–04 (Ch. Div. 1981) (stating that because the plaintiffs relied upon counsel" who failed to raise objections to terms in a lease agreement prior to signing despite having the opportunity to examine the applicable agreement, they "therefore cannot recover on a theory of fraud").

---

[9] To the extent that Count Five is based on Greenberg misstating Lench's status as a purchaser, the FATPC also fails to plausibly allege that Greenberg knew having Lench/JL as the purchaser was material to the Sellers or knew of the alleged falsity of any of Lench's representations regarding the same.   Nicholas Pools alleges Greenberg knew Lench and JL were viewed as trusted buyers because Greenberg was present at all negotiations and was aware of Lench's prior dealings with Ms. Sergiou's father, Christofi. (Opp'n at 10–11.)   However, it does not follow that Greenberg knew Nicholas Pools considered having Lench as a purchaser to be material in an entirely different transaction, or that she was privy to Lench's intentions.   Moreover, the LOI did not include a provision preventing a change in purchaser and the APA did not mention Lench.   (*See* Greenberg Moving Br. at 6 n.11.)   The FATPC also fails to allege that Greenberg knew about the assignment of the contract to Kurlander.   (*See* Greenberg Reply at 3.)   The record indicates that the signatories to the Assignment were Lench and Kurlander alone, with no mention of Greenberg.   (*See* Assignment at 4.)

Nicholas Pools cannot claim that they reasonably relied on any misrepresentations Greenberg allegedly made about Assumed Liabilities. The language of the Assumed Liabilities provision is clear. The FATPC fails to allege that prior to signing the Business sale documents on May 25, 2022, Attorney Mylod or the Sellers themselves conducted adequate diligence to review the redline which contained the changes to Schedule 1.3, despite Attorney Mylod being on notice that the schedules "need[ed] review." (FATPC ¶ 141.)

Nicholas Pools alleges that Attorney Giletto's May 23, 2022 email attaching the schedules failed to highlight the changes to Schedule 1.3. (*Id.* ¶ 121.) However, even if Nicholas Pools "had no reason to be concerned about liabilities," (*id.* ¶ 142), there is no indication that Attorney Mylod or any party related to Sellers reviewed the redline to verify the information in Schedule 1.3 was "correct" prior to closing. In fact, it was not until May 26, 2022, after Sellers had signed the documents, that Attorney Mylod "expresse[d] confusion over what was sent and signed by his client," but still failed to raise any objections prior to closing as to the content of the documents. (*Id.* ¶ 144.) In short, the FATPC does not adequately plead that it was reasonable for Sellers to rely on any statements Greenberg may have made on behalf of JL/Lench about Assumed Liabilities prior to closing.

Nicholas Pools' fraud claim as to any post-closing statements made by Greenberg or Lench on behalf of JL regarding Nicholas Pools' credit accounts must also fail. It is not plausible for Nicholas Pools to have reasonably relied on Lench "hold[ing] himself out as a Buyer" after closing when Nicholas Pools had signed the APA and was aware Lench was not, in fact, one of the Buyers. (*Id.* ¶ 209.) The fully executed APA, including its "Omnibus Amendment," dated May 31, 2022 defines Ocean as the "Buyer" and has Kurlander and Gelbwachs signing on behalf of Ocean. (JL & Lench Reply at 3 (citing APA, ECF No. 35-4 Ex. 1).) The APA also includes an integration

clause (APA § 10.10) that allows only written modifications, making any reliance by Nicholas Pools on post-signing oral representations unjustifiable.   Accordingly, Count Five will be **DISMISSED WITHOUT PREJUDICE**.

### B.  THE UNJUST ENRICHMENT CLAIM (COUNT NINE) MUST ALSO FAIL

In Count Nine, the FATPC alleges that all Third-Party Defendants were unjustly enriched "[a]s a result of the Third-Party Defendants' unilateral insertion of a liability cap," (FATPC ¶ 296), which allowed them to benefit financially from the sale of the Business—including financial benefits from the assignment fee and net purchase price—without having to pay any liabilities. (*Id.* ¶ 297.)  In the Opposition, however, Nicholas Pools contends that the "essence" of their claim is that "Lench and Greenberg[ ] financially benefited from securing a contract with OP while . . . holding themselves out as having apparent authority of the actual buyers, Gelbwachs and Kurlander."  (Opp'n at 4.)  Nicholas Pools appears to base the claims of unjust enrichment on different facts in different pleadings.  (*Compare* FATPC ¶¶ 296–97 (unjust enrichment claim based on "unilateral" insertion of liability cap) *with* Opp'n at 4 ("essence" of unjust enrichment claim based on contract with Kurlander/OP which allegedly resulted in Lench/Greenberg/JL receiving assignment fee).)

JL and Lench argue that Count Nine is a "verbatim" repetition of the prior unjust enrichment claim in the TPC, and therefore should once again be dismissed for the same reasons articulated in the Prior Opinion—there are undisputed "express contract[s] covering the identical subject matter" alleged in the quasi-contractual unjust enrichment claim, preventing the claim from proceeding.  (JL & Lench Moving Br. at 1–2; Prior Op. at 10–11) (quoting *All Seasons Home Improvement Co. v. Arch Concept Constr., Inc.*, Civ. No. 16-0751, 2018 WL 3928787, at *8 (D.N.J. Aug. 16, 2018) (citation omitted).)  *See also Berrada v. Cohen*, Civ. No. 16-574, 2018 WL

4629569, at *5 (D.N.J. Sept. 27, 2018) (noting unjust enrichment is a quasi-contractual theory). JL and Lench also contend that Nicholas Pools fails to allege that either Lench or JL had or have any ownership interests in Ocean, the purchasing entity of Nicholas Pools.  (JL & Lench Moving Br. at 2–3.)  Greenberg argues that the FATPC fails to adequately plead that she was a principal and/or agent of JL and Ocean.  ("Greenberg Moving Br.", ECF No. 68 at 9–10.)  Nicholas Pools responds that Count Nine is not a "verbatim" repetition because it incorporates additional factual allegations in the FATPC ¶¶ 221–42, and that because Nicholas Pools disputes the enforceability of the APA and its schedules, its quasi-contract claim can succeed.  (Opp'n at 3–5.)  For the reasons stated below, the Court disagrees with Nicholas Pools.

      1.  <u>Count Nine Fails to Adequately Allege Agency Liability as to Greenberg, Lench, and JL for Unjust Enrichment</u>

As a threshold matter, Nicholas Pools fails to plausibly allege that Greenberg, Lench, or JL are liable for unjust enrichment in their capacities as agents of their corporate principals.  To state a claim for unjust enrichment, a plaintiff must allege that: "(1) at plaintiff's expense (2) defendant received [a] benefit (3) under circumstances that would make it unjust for defendant to retain [such] benefit without paying for it."  *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (citing Restatement (First) of Restitution § 1 (1937)).  A plaintiff must also show "that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights."  *Thieme v. Aucoin-Thieme*, 227 N.J. 269, 288 (2016) (citation omitted); *see also Cooper v. Samsung Electronics Am., Inc.*, Civ. No. 07-3853, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008) (dismissing unjust enrichment claim because the plaintiff conferred no direct benefit on the defendant).

The FATPC fails to present a theory of agency under which Greenberg, Lench, or JL would be liable for unjust enrichment.  The Court stated in the Prior Opinion:

> quasi-contractual claims may not be feasible against Lench or Greenberg because Nicholas Pools in their briefing suggests that Lench and Greenberg are agents making promises on behalf of their corporate principals. . . . As such, any quasi-contractual relationship entered into by Greenberg or Lench presumably binds their principal, but not necessarily them individually as agents, unless Nicholas Pools can show otherwise through relevant case law and analysis.

(Prior Op. at 11 n.12.)  Nicholas Pools responds that Greenberg and Lench falsely represented that they had "apparent authority" to act on behalf of their corporate principals—Buyers Kurlander, Ocean (the purchasing entity Kurlander created), and Gelbwachs.  (FATPC ¶¶ 36–38, 41, 45, 48, 209, 236; *see also* Opp'n at 9.)[10]  Nicholas Pools also alleges that "[n]either Kurlander nor Gelbwachs did anything to dissuade or correct this impression of authority."  (Opp'n at 9.)

Greenberg, JL, and Lench cannot be liable under this theory because, as the Court has already indicated in its prior Opinion, the premise of apparent authority is the imposition of liability on the principal, not on the agent.  *See Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 445 (3d Cir. 1999) ("Generally, of course, an agent of a disclosed principal, even one who negotiates and signs a contract for her principal, does not become a party to the contract.") (citations omitted); *BH 329 NB LLC v. CBRE, Inc.*, Civ. No. 16-8141, 2017 WL 3641566, at *3 (D.N.J. Aug. 24, 2017) ("Generally when an agent enters into a contract on behalf of its disclosed principal, it is the principal, not the agent, who is bound by the contract.") (citation omitted).   The relevant

---

[10] The Court notes that Nicholas Pools appears to indicate that Lench and Greenberg acted at various times as principals and at other times as agents of the Buyers.  In its Opposition, Nicholas Pools refers to Lench and Greenberg as "principal buyers," and two sentences later as "agents every step of the way."  (Opp'n at 9; *see also* FATPC ¶ 203 (stating that Lench presented himself as a "principal buyer" or as "princip[al]" of the purchasing entity, OP).)  The Opposition also names Ocean as the "princip[al]" and Lench, Greenberg, and JL as Ocean's "agents."  (Opp'n at 10.)

Restatement, quoted by Plaintiffs in their opposition brief, is consistent with this notion, despite Plaintiffs' apparent misunderstanding to the contrary.  In its entirety, the Restatement says:

> One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

Restatement (Second) of the Law of Agency § 267 (1958).  Accordingly, the "one" who "is subject to liability" is the principal, not the agent.  As a result, the Court rejects Third-Party Plaintiffs' argument that Greenberg, JL, and Lench can be liable under an apparent agency theory.  The Court finds that the claims against them in Count Nine should be dismissed.  Nonetheless, dismissal of the unjust enrichment claims alleged against Greenberg, JL, and Lench in Count Nine does not necessarily preclude liability for OP, Gelbwachs, and Kurlander as principals.

### 2.   No Individual Liability for Unjust Enrichment as to Greenberg

Separately the Court notes for the purpose of clarity that to the extent that Nicholas Pools' unjust enrichment claim is based on the unilateral insertion of the liability cap, Greenberg is the only specifically-named Third-Party Defendant alleged to have unilaterally changed Schedule 1.3. (*See* FATPC ¶ 234.)   The only pleadings alleging Greenberg was involved in changing the schedules, however, are group pleadings implicating "Third-Party Defendants" (*see, e.g.*, *id.* ¶¶ 194, 196) "without setting forth what each particular defendant is alleged to have done[,]" which is impermissible.  (*See* Prior Op. at 9 (quoting *Yu-Chin Chang v. Upright Fin. Corp*, Civ. No. 19-18414, 2020 WL 473649, at *3 (D.N.J. Jan. 28, 2020).)

The FATPC does not adequately plead that Greenberg is liable in her individual capacity. First, Greenberg is not alleged to be a party to the APA and there is no further allegation that she personally received a monetary benefit from the sale of the Business.  (*See* FATPC ¶ 307 (alleging that "[a]bsent reformation, Third-Party Defendants, Kurlander, Gelbwachs, and O[cean] will be

unjustly enriched having received the business and assets for an approximate net of $500,000.00" but failing to mention Greenberg); FATPC ¶ 40 (alleging that Greenberg "is verily believed to have an interest in [Ocean]" but failing to clarify what that interest is); *see also* Greenberg Moving Br. at 10 (citing APA Ex. 1 at 1).)   Second, there is no allegation that Greenberg personally received any monetary benefit from the Assignment, which only directed that JL (with Lench signing on its behalf) would receive the assignment fee (*see* FATPC ¶¶ 31–33; Assignment at 1) once the Business was sold.  (*See* FATPC ¶ 29 (stating that "Greenberg falsely held herself out as a Buyer in order to secure the sale of the pool business and collect the assignment fee . . . *on behalf of* JLCR" but not on her own behalf); *see also* Greenberg Reply at 9–10.)   As such, any unjust enrichment claim as to Greenberg in her individual capacity must fail for this separate reason.

### 3.   No Individual Liability for Unjust Enrichment as to Lench and JL

Likewise, to the extent that Nicholas Pools' unjust enrichment claim is based on Lench/JL obtaining a contract with the Buyers and receiving the $1,000,000 assignment fee (*see id.* ¶ 308; *see also* Opp'n at 4), this claim also fails because an undisputed express contract governs the Assignment.   "[W]here express contracts exist concerning the same subject matter alleged in a quasi-contract claim, the quasi-contractual claim can only move forward as an alternative to a breach of contract claim where the enforceability of the express contract is at issue."   *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 259 (D.N.J. 2020) (citation omitted).   Nicholas Pools proffers that it "dispute[s] the enforceability of the APA and the Schedules as attached" (*see* Opp'n at 3), but does not appear to dispute the enforceability of the Assignment contract Lench signed on JL's behalf.   (*See* Assignment at 4.)   Accordingly, Count Nine, as to JL, Lench, and Greenberg only, will be **DISMISSED WITHOUT PREJUDICE**.   The Court, in dismissing the FATPC for the aforementioned reasons, declines to address the parties' remaining arguments.

## V.    <u>CONCLUSION</u>

For the reasons stated above, the Court will **GRANT** JL's and Lench's Motion (ECF No. 67) and **GRANT** Greenberg's Motion (ECF No. 68).  The FATPC (Counts Four, Five, and Nine) as to JL, Lench, and Greenberg will be **DISMISSED WITHOUT PREJUDICE** to give Nicholas Pools a final opportunity to clarify its theories.  An appropriate Order will follow.

Date: **June 18, 2024**

s/ Zahid N. Quraishi        
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
