**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

**SCP DISTRIBUTORS LLC**,

        Plaintiff,

        v.

**NICHOLAS POOLS INC.**, *et al.*,

        Defendants,

        and

**NICHOLAS POOLS INC.**, *et al.*,

        Third-Party Plaintiffs,

        v.

**OCEAN POOLS & SPAS CORP.**, *et al.*,

        Third-Party Defendants.

---

Civil Action No. 22-6721 (ZNQ) (RLS)

**OPINION**

**QURAISHI, District Judge**

        **THIS MATTER** comes before the Court upon a Motion for Summary Judgment filed by Third-Party Defendants Ocean Pools & Spas Corp. ("Ocean"), Dov Kurlander ("Kurlander"), and Nissan Gelbwachs ("Gelbwachs") (collectively, the "Third-Party Defendants") pursuant to Rule

1

56 of the Federal Rules of Civil Procedure.[1]  ("MSJ," ECF No. 159.)  Third-Party Defendants filed a Memorandum of Law in support of the MSJ ("Moving Br.," ECF No. 159-1) and a Statement of Material Facts Not in Dispute ("Third-Party Defendants' SMFNID," ECF No. 159-2).  Third-Party Plaintiffs Nicholas Pools, Inc. ("Nicholas Pools"), Sotiris Sergiou ("Mr. Sergiou"), and Theodora Sergiou ("Mrs. Sergiou") (collectively, the "Third-Party Plaintiffs") filed a Brief in Opposition to the MSJ ("Opp'n Br.," ECF No. 164), along with a Response to Third-Party Defendants' SMFNID (ECF No. 164).  Third-Party Defendants filed a Reply.  ("Reply Br.," ECF No. 165.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Third-Party Defendants' MSJ in its entirety.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

A.    **THE PARTIES**

Nicholas Pools is a New Jersey corporation based in Toms River.  (Am. Compl. ¶ 1.)  Mr. Sergiou was a 49% shareholder of Nicholas Pools, and Mrs. Sergiou was a 51% shareholder.  (*Id.* ¶¶ 2, 3.)  Ocean is a New Jersey corporation located in Lakewood.  (*Id.* ¶ 6.)

B.    **UNDISPUTED FACTS**

The Court finds the facts set forth below are undisputed.

In February and March 2022, Ocean and Nicholas Pools began negotiating an asset purchase agreement ("APA") for the sale of Nicholas Pools to Ocean.  (Third-Party Defendants' SMFNID ¶ 2.)  The APA negotiations included discussions regarding specific liabilities that Ocean

---

[1] A Motion for Partial Summary Judgment was filed by Third-Party Plaintiffs Nicholas Pools, Inc. ("Nicholas Pools"), Sotiris Sergiou ("Mr. Sergiou"), and Theodora Sergiou ("Mrs. Sergiou") (collectively, the "Third-Party Plaintiffs"). (ECF No. 160.)  However, the assigned magistrate judge terminated this motion, deeming it premature.  (*See* ECF No. 163.)

would assume on behalf of Nicholas Pools.  These assumed liabilities were to be outlined in a schedule attached to the APA.  (*Id.* ¶ 3.)

On March 30, 2022, counsel for Nicholas Pools, Philli Mylod ("Mylod"), emailed Ocean's counsel, Jeffrey Folger ("Folger"), notifying him that he was "preparing or working on" the APA and the schedules to the APA.  (*Id.* ¶ 4.)  On March 31, 2022, Mylod emailed Folger his redline changes to the APA and asked Folger to review.  (*Id.* ¶ 5.)  Mylod indicated in this email that he was "still working on" the schedules.  (*Id.*)

Counsel continued to negotiate the APA throughout April and May 2022.  (*Id.* ¶ 6.)  On April 7, 2022, Folger emailed Mylod and said that he "attached what [he] expect[s] to be the final APA.  The redline is marked against your last draft (without the 'comments').  I also attached the current schedules . . . Please confirm that you are OK with this draft and that we can proceed to next steps, including . . . finalizing the other transaction documents, finalizing the schedules, and getting all closing deliveries in place."  (*Id.* ¶ 6.)

On April 11, 2022, Folger emailed Mylod, stating "[p]lease send me your comments to the APA, we need to finalize the draft.  Let's also get the dollar amount of the assigned liabilities . . . ."  (*Id.* ¶ 8.)  Thereafter, on April 14, 2022, Folger emailed Mylod with a "road map" for finalizing the APA, which included finalizing the draft, determining estimated liabilities, and signing off on the schedules.  (*Id.* ¶ 9.)  The next day, Folger emailed Mylod again, reminding him that the list and values of the assumed liabilities were still needed.  (*Id.* ¶ 10.)  Folger also requested that Mylod coordinate with Mariel Giletto ("Giletto"), also counsel for Ocean,[2] regarding the Asset Transfer Tax Declaration necessary to complete the transaction.  (*Id.*)

---

[2] In Third-Party Plaintiffs' Response to Third-Party Defendants' SMFNID, Third-Party Plaintiffs denied that "Mario Galletto" was identified as an attorney.  (*See* ECF No. 164 ¶ 10.)

On April 15, Mylod emailed Folger and wrote that the parties' needed a "[f]igure on assumed liabilities with regard to the bulk sales form to be filed with the State . . . ." (*Id.* ¶ 11.) Mylod explained that the assumed liabilities would "have to be estimated as it's a moving target." (*Id.*)

In late April and May 2022, counsel for Ocean sent several emails to counsel for Nicholas Pools advising that the purchase price to be included on the Form C9600 that had to be submitted to the Bulk Sales Section of the New Jersey Division of Taxation ("NJ Bulk Sales") needed to be revised to include the value of the Assumed Liabilities. (*See id.* ¶ 12.)

On or about May 3, 2022, Nicholas Pools' counsel provided Ocean's counsel with a copy of the Asset Transfer Tax Declaration that it submitted to NJ Bulk Sales. (*Id.* ¶ 13.) This document was signed by Mr. Sergiou and stated that the total consideration for the transaction was $2,300,000.00. (*Id.*) Counsel for Nicholas Pools submitted the Asset Transfer Tax Declaration. (*Id.* ¶ 14.)

On May 6, 2022, Giletto emailed Mylod that she was preparing drafts of the APA schedules for Mylod's review. (*Id.* ¶ 17.) On May 23, 2022, Giletto emailed Mylod a red-lined and clean copy of Schedule 1.3.[3] These attachments included the following language included in Section 1.3:

> In accordance with the provisions of Section 1.3 of the Agreement, subject to the conditions specified in this Agreement from and after the Closing Date, Buyer will assume and agree to pay, defend, discharge and perform, as and when due, only the following specific Liabilities listed below on this Schedule 1.3 and only to the extent relating to the Purchased Assets (the "Assumed Liabilities") and no other Liabilities:

---

[3] Third-Party Plaintiffs dispute that the email makes any mention to redline changes to Schedule 1.3. (*See* Third-Party Plaintiffs' Response to SMFNID ¶ 19.) However, the email clearly states: "Attached is a redline and clean of the schedules." (*See* Third-Party Defendants' SMFNID ¶ 19, Ex. 9.)

      1.  The lesser of: (a) the value of all payables due to the South Central Pools Corp and (b) $300,000.

(*Id.* ¶ 19.)  Mylod admitted at deposition that he did not review the redline and clean attachments that were sent to him.  (*Id.* ¶ 20.)

On May 24, 2022, Giletto emailed Mylod and attached final versions of several agreement documents, including: the Bulk Sale Escrow Agreement; Closing Statement/Flow of Funds; First Amendment to Asset Purchase Agreement; Bill of Sale; and Schedules.  (*Id.* ¶ 21.)  Giletto indicated that she had yet to receive approval as to these documents from all parties.  (*Id.*)  The next day, Giletto emailed Mylod and indicated that she needed additional information from Mylod's clients in order for the schedules to be finalized.  (*Id.* ¶ 22.)  That same day, Mylod approved the documents in an email to Giletto.  (*Id.* ¶ 23.)

On May 31, 2022, the parties executed an Omnibus Agreement which included the APA and various ancillary documents to effectuate the sale.  (*Id.* ¶ 24.)  This Omnibus Agreement included a Promissory Note in the amount of $600,000.  (*Id.*)  The Omnibus Agreement was signed by the parties and their respective counsel.  (*Id.*)  That same day, the parties also executed the APA for the purchase and sale of Nicholas Pools and the related APA schedules.  (*Id.* ¶¶ 25, 26.)  Section 1.3 of the APA provides:

> Buyer will not assume or in any way be responsible for any Liabilities of Seller or its Affiliates or the Owners or any other Liabilities whatsoever related to the ownership, operation or condition of the Business or the Purchased Assets at any time prior to the Closing Date, except as specifically provided below. Subject to the conditions specified in this Agreement, from and after the Closing Date, Buyer will assume and agree to pay, defend, discharge and perform, as and when due, only the specific Liabilities listed on Schedule 1.3 hereto and only to the extent relating to the Purchased Assets (the "Assumed Liabilities") and no other Liabilities.

(*Id.* ¶ 27.)  Schedule 1.3 of the APA provides:

> In accordance with the provisions of Section 1.3 of the Agreement, subject to the conditions specified in this Agreement from and after the Closing Date, Buyer will assume and agree to pay, defend, discharge and perform, as and when due, only the following specific Liabilities listed below on this Schedule 1.3 and only to the extent relating to the Purchased Assets (the "Assumed Liabilities") and no other Liabilities. 1. The lesser of: (a) the value of all payables due to the South Central Pools Corp and (b) $300,000.00.

(*Id.* ¶ 28.)  The APA also included the following integration clause:

> This Agreement and the Transaction Documents constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and those in the Transaction Documents, the Exhibits and Schedules, the statements in the body of this Agreement will control.

(*Id.* ¶ 29.)  Further, Section 1.4 of the APA provides that:

> 1.4 Excluded Liabilities. Except for the Assumed Liabilities, Buyer shall not assume or be obligated to pay, perform or otherwise discharge any Liabilities of 8 Seller or any of its Affiliates, direct or indirect, known or unknown, absolute or contingent (all such Liabilities and obligations not being assumed, the "Excluded Liabilities." Seller and Owners shall, and shall cause each of its and their Affiliates to, pay and satisfy in due course all Excluded Liabilities when they are obligated to pay and satisfy. Without limiting the generality of the foregoing, the Excluded Liabilities shall include, but not be limited to, the Excluded Liabilities set forth on Schedule 1.4.

(*Id.* ¶ 30.)  Section 7.12 of the APA allows Ocean, upon written notice, to withhold or deduct ("set off") amounts that Nicholas owes to Ocean under the Agreement or related documents from any payments otherwise due to Nicholas Pools, including the $600,000 balance of the purchase price. (*Id.* ¶ 36.)  Ocean's good-faith exercise of this set off right does not constitute a default under the APA.  (*Id.*)

6

On June 1, 2022, Giletto emailed Mylod the executed APA in an email with the subject line titled "Closing Binder." (*Id.* ¶ 31.) On June 4, 2022, Mylod emailed Giletto to let her know that he reviewed the binder. (*Id.* ¶ 32.) Although Mylod admits that he received the closing binder and the contract documents, he testified that he did not review the schedules, including Schedule 1.3. (*Id.* ¶ 33.)

On July 28, 2022, Ocean provided its Set Off Notice to Nicholas Pools. (*Id.* ¶ 37.)

Ocean has since satisfied the maximum $300,000 cap of Assumed Liabilities in the APA. (*Id.* ¶ 38.) Nicholas Pools still owes more than $362,566 to various vendors and suppliers and has refused to settle these debts.[4] (*Id.* ¶¶ 39, 40.)

## C.     PROCEDURAL HISTORY

On November 22, 2022, Plaintiff SCP Distributors LLC ("SCP") filed a Complaint in this Court against Nicholas Pools alleging various breach of contract claims stemming from the alleged breach of a Credit/Business Application and Agreement (the "SCP Agreement"). (Compl. ¶¶ 1–43, ECF No. 1; *see generally* "SCP Agreement", ECF No. 1-1.) SCP alleges that under the SCP Agreement, Nicholas Pools agreed to purchase certain pool supplies and equipment. (Compl. ¶ 7; *see generally* SCP Agreement.) In exchange for SCP's agreement to sell supplies to Nicholas Pools, the Sergious executed and delivered to SCP a personal guarantee to pay any of Nicholas Pools' outstanding obligations to SCP. (Compl. ¶ 8.) As of October 28, 2022, SCP alleges Nicholas Pools has failed to pay $332,970.70 under the SCP Agreement for the purchase of supplies from SCP. (*Id.* ¶¶ 11–13.) SCP brought its Complaint in this matter to collect that sum. (*See generally id.*)

---

[4] Note that Third-Party Plaintiffs did not provide a response to paragraphs 39 through 41 of Third-Party Defendants' SMFNID. The facts contained in paragraphs 39–41 are therefore deemed undisputed for the purposes of this motion. Loc. Civ. R. 56.1(a).

On January 25, 2023, Nicholas Pools filed a Third-Party Complaint against Third-Party Defendants.  (ECF No. 9.)  The Court, in its Prior Opinion dated September 19, 2023, dismissed the Third-Party Complaint without prejudice.  (*See* "Prior Op.", ECF No. 57.)  On October 18, 2023, Nicholas Pools filed the operative First Amended Third-Party Complaint. (ECF No. 64.) The First Amended Third-Party Complaint, like the Third-Party Complaint, alleges that Third-Party Defendants are liable for the debt Nicholas Pools accrued to SCP because Third-Party Defendants assumed Nicholas Pools' SCP liabilities after purchasing the Business. (*See generally id.*)

### D.    JURISDICTION

The Court exercises its ancillary jurisdiction[5] over the third-party claims herein because diversity of citizenship exists between the original parties pursuant to 28 U.S.C. § 1332(a)(1) and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## II.    LEGAL STANDARD

### A.    RULE 56

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

---

[5] The Third Circuit has endorsed the notion that a "defendant's claim against a third-party defendant is within the ancillary jurisdiction of the federal courts.  Thus, . . . there need be no independent jurisdictional basis for such a claim if diversity of citizenship exists between the original parties." *Field v. Volkswagenwerk AG*, 626 F.2d 293, 299 (3d Cir. 1980) (quoting 6 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1444 at 223 (collecting cases))).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250).

"Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id.* (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

## III.   **DISCUSSION**

Third-Party Defendants move for summary judgment on the following claims: breach of contract as to the promissory note ("Count One"); breach of contract as to the personal guarantee ("Count Two"); breach of contract as to the APA ("Count Three"); common law fraud in the inducement ("Count Six"); breach of implied covenant of good faith and fair dealing ("Count Seven"); conversion/theft by deception ("Count Eight"); unjust enrichment ("Count Nine"); unjust enrichment reformation ("Count Ten"); and unilateral mistake ("Count Eleven"). For the following reasons, the MSJ will be granted.

**A.    WHETHER A VALID AND ENFORCEABLE CONTRACT EXISTED BETWEEN THE PARTIES**

Under New Jersey law, a plaintiff has the burden to prove four elements for a breach of contract cause of action: (1) the parties entered into a contract containing certain terms; (2) the plaintiff did what the contract required him to do; (3) the defendant did not do what the contract required him to do; and (4) defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff. *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016). A valid contract, in turn, requires "mutual assent, consideration, legality of the object of the contract, capacity of the parties, and formulation of memorialization." *Gutwirth v. Woodford Cedar Run Wildlife Refuge*, 38 F. Supp. 3d 485, 491 (D.N.J. 2014) (citing *D'Agostino v. Appliances Buy Phone, Inc.*, Civ. No. 10-05415, 2011 WL 4345674, at *6 (D.N.J. Sept. 15, 2011)).

At issue here is Section 1.3 of the APA. Section 1.3, Assumed Liabilities, provides that Ocean "will assume and agree to pay, defend, discharge and perform, as and when due, only the specific Liabilities listed on Schedule 1.3 hereto and only to the extent relating to the Purchased Assets . . . and no other Liabilities." (*See* Ex. 13.) Schedule 1.3 provides that Ocean will only pay "[t]he lesser of: (a) the value of all payables due to the South Central Pools Corp and (b) $300,000. (*Id.*)

The parties do not dispute that they entered into a valid contract. On May 31, 2022, the parties executed the Omnibus Agreement, which was the master agreement that included the APA and various other ancillary documents. (*See* Third-Party Defendants' SMFNID ¶¶ 24–30; Third-Party Plaintiffs' Response to SMFNID ¶¶ 24–30.) Third-Party Plaintiffs initialed each page of the agreement. (*See* Third-Party Defendants' SMFNID ¶ 26; Third-Party Plaintiff's Response to SMFNID ¶ 26.) Third-Party Plaintiffs do not argue that the APA is ambiguous, either. Instead,

Third-Party Plaintiffs argue that Third-Party Defendants "defraud[ed] and misle[]d [them] into [ ] making a unilateral mistake." (Opp'n Br. at 1.)

Third-Party Defendants complied with the terms of the APA when they paid $300,000—an amount less than the value of all payables due to South Central Pools Corp. Because the parties entered into a valid contract and performed as the contract terms dictated them to do, a breach of contract claim cannot survive here. As such, Third-Party Defendants' motion for summary judgment as to Counts One and Two, the breach of contract claims, will be **GRANTED**.

Because the parties do not dispute that a straightforward reading of the APA indicates that Ocean was obligated to pay only the lesser of the value of all payables due to the South Central Pools Corp and $300,000, the Court will next address whether the parol evidence rule applies.

         1.       <u>Parol Evidence and Integration Clause</u>

Third-Party Defendants argue that Third-Party Plaintiffs' claims and defenses rely entirely on impermissible extrinsic evidence outside the four corners of the APA. (Moving Br. at 11.) Third-Party Plaintiffs argue that the introduction of extrinsic evidence is permitted here to prove fraud in the inducement. (Opp'n Br. at 12.) Specifically, Third-Party Plaintiffs argue—without citing to anything in the record—that they had been "assured" that the APA contained a schedule of Assumed Liabilities" when it did not. (*Id.* at 13.)

In general, where a contract contains an integration clause, the parol evidence rule bars the introduction of evidence of extrinsic negotiations or agreements to supplement or vary its terms. *Conway v. 287 Corporate Ctr. Assocs.*, 187 N.J. 259, 268 (2006). There is an exception, however, for evidence of fraud in the inducement. In those instances, this evidence is not offered to add or change contract terms, but to void the contract altogether. *See Ocean Cape Hotel Corp. v. Masefield Corp.*, 164 A.2d 607, 611 (N.J. Super. Ct. App. Div. 1960) ("[P]arol proof of fraud in the inducement is not considered as either additional or substitutionary but rather as indicating

11

that the instrument is, by reason of the fraud, void or voidable."); *Walid v. Yolanda for Irene Couture, Inc.*, 40 A.3d 85, 94 (N.J. Super. Ct. App. Div. 2012) (noting that "extrinsic evidence to prove fraud in the inducement is a well-recognized exception to the parol evidence rule"). The alleged fraud, however, must concern a matter not addressed in the agreement; in other words, the subject of the misrepresentation must be extraneous to the agreement. *See Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc.*, 357 F. Supp. 2d 788, 795 (D.N.J. 2005) (citing *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 598 A.2d 1234, 1236 (N.J. Super. Ct. App. Div. 1991)). Where, by contrast, misrepresentations made during the course of negotiations are addressed by the terms of the contract, the claim becomes one for breach of contract, not fraudulent inducement. In such a case, the integration clause will bar the claim. *RNC Systems, Inc. v. Mod. Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 454 (D.N.J. 2012).

Here, the integration clause provides:

> This Agreement and the Transaction Documents constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and those in the Transaction Documents, the Exhibits and Schedules, the statements in the body of this Agreement will control.

(*See* MSJ, Ex. 13 at § 10.7.)

"It is manifestly unreasonable" for a party to rely on prior oral statements when the express language of the contract is written "explicitly nullifying any previous agreements, oral or written." *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 436 (D.N.J. 1998). This is especially true when the parties to the contract are "knowledgeable business people." *Id.*

Third-Party Plaintiffs argue that the integration clause and the parol evidence rule should not bar the admission of Third-Party Defendants' alleged misrepresentations and conduct. Third-Party Plaintiffs, however, fail to address the distinction between "fraud regarding matters expressly addressed in the integrated writing and fraud regarding matters wholly extraneous to the writing." *See Filmlife, Inc.*, 251 N.J. Super. at 574. "The general rule is clear that a[n] . . . agreement which is in terms contradictory of the express words of a contemporaneous or subsequent written contract, properly interpreted, necessarily is ineffectual and evidence of it inadmissible, whether the . . . agreement be called collateral or not." *Travelodge Hotels Inc.,* 357 F. Supp. 2d at 796; *see also Chen v. HD Dimension Corp.*, Civ. No. 10-863, 2010 WL 4721514, at *7 (D.N.J. Nov. 15, 2010) (concluding that the "entire agreement and understanding" provision of the agreement barred any claims based on representations not included in the terms of the contract where the complaint merely alleges the defendants failed to perform their obligations under the agreement).

Here, the misrepresentations claimed by Third-Party Plaintiffs fall within the scope of the integration clause. Thus, the parol evidence rule applies, and any extrinsic evidence must be barred. The alleged misrepresentations were made prior to executing the contract while the parties were negotiating the agreement. Furthermore, all parties here are sophisticated corporate entities. The alleged misrepresentations relate directly to the express terms of the APA and cannot be used to support a fraudulent inducement claim.

Accordingly, Third-Party Defendants' motion for summary judgment on Counts Four, Five, and Six, the fraudulent inducement claims, will be **GRANTED**.

       2.     <u>Unilateral Mistake</u>

Third-Party Plaintiffs spill considerable ink in arguing that Third-Party Defendants inserted an unnegotiated version of Section and Schedule 1.3 into the APA. (*See* Opp'n Br. at 3–9.) However, there was no unilateral mistake here.

"Under New Jersey contract law, a contract term is generally binding if 'the contract has been mutually agreed upon by the parties, is supported by valid consideration, and does not violate codified standards or offend public policy.'" *Weisman v. New Jersey Dept. of Human Servs.*, 982 F. Supp. 2d 386, 394 (D.N.J. 2013) (quoting *Hoffman v. Supplements Togo Mgmt., LLC,* 18 A.3d 210, 216 (N.J. Super. Ct. App. Div. 2011)).  For a mutual agreement, there must be a meeting of the minds, which "signifies that each party to the contract must have been fairly informed of the contract's terms before entering into the agreement." *Id.* (citation omitted).

Of particular relevance to this matter, "[a] party who enters into a written contract, without being induced by fraud or 'imposition being practiced upon him, is conclusively presumed to understand and assert to its terms and legal effect.'" *Id.* at 394–95 (quoting *Baig v. Nuclear Regul. Comm'n,* Civ. No. 10-0842, 2013 WL 1558707, at *3 (D.N.J. April 10, 2013)) (quoting *Rudbart v. New Jersey Dist. Water Supply Comm'n,* 127 N.J. 344, 348 (1992)); *see also Raiczyk v. Ocean Cnty. Veterinary Hosp.,* 377 F.3d 266, 270 (3d Cir. 2004) ("[I]t is well settled that signing a contract creates a 'conclusive presumption that the signer read, understood, and assented to its terms.'") (quoting *Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 842–43 (D.N.J. 1995)).  That is, unless there is some mistake, fraud, duress, or other "imposition," the unambiguous terms of the settlement agreement are binding. And, "[w]hile rescission may be available in cases of unilateral mistake, such relief cannot be granted where the mistake occurs as a result of the mistaken party's own negligence." *Id.* (quoting *Baig,* 2013 WL 1558707, at *3).

Negligence precludes meeting the third of the four conditions that must be present to grant rescission of a contract due to unilateral mistake: (1) The mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable; (2) the matter as to which the mistake was made must relate to the material feature of the contract; (3) the mistake

14

must have occurred notwithstanding the exercise of reasonable care by the party making the mistake; and (4) it must be able to get relief by way of rescission without serious prejudice to the other party, except for loss of his bargain. *Contreras v. United States*, Civ. No. 19-12870, 2022 WL 970192, at *6 (D.N.J. March 31, 2022).

Here, the record reflects that the mistake occurred as a result of Third-Party Plaintiffs' counsel's—Mylod's—negligence. Mylod testified that in his 37 plus years of experience, "that if someone makes a material change to a contract, they bring it to your attention and they tell you that." (*See* Opp'n Br. at 6.)[6] In that same testimony, Mylod also reveals that "[s]chedules were provided to [him], they were red lined." (*Id.*)[7] He even noted that the draft schedules "were always changing." (*Id.*)[8] Additionally, Third-Party Plaintiffs argue in their brief that the party who sent the at-issue final draft of the schedule on behalf of Third-Party Defendants—Giletto—"was never a part of the negotiation process." (*Id.* at 7.)

As a practical matter, Giletto's involvement should have set off alarm bells in Mylod's mind. At the very least, the involvement of a new-to-Mylod attorney in the negotiation process should have prompted him to read the attachments sent to him. However, Mylod *admits* that he "did not reread the Schedule." (*Id.* at 6.) "Failing to read a contract . . . provides no defense to an agreement's binding terms." *Giaccone v. Canopius U.S. Ins. Co.*, 133 F. Supp. 3d 668, 674 (D.N.J. 2015) (citing *Baig*, 2013 WL 1558707, at *3; *Modern Security v. Lockett*, 143 A. 511 (N.J. 1928); *Riverside Chiropractic Grp. v. Mercury Ins. Co.*, 404 N.J. Super. 228, 961 A.2d 21 (2008)). "[A]

---

[6] Third Party Plaintiffs vaguely cite Mylod's 200+ page deposition transcript without reference to an exhibit number and fail to identify pin cites to the relevant pages. Although it was not the Court's obligation to do so, it located the relevant portions of the transcript and confirmed the accuracy of Mylod's cited testimony. Here, the relevant testimony appeared on page 141 of Mylod's deposition transcript, which Third Party Plaintiffs attached in two parts as unlabeled exhibits to their Opposition. (ECF Nos. 164-2 and 164-3.)

[7] Mylod deposition at 141.

[8] Mylod deposition at 141.

contract may not be rescinded where a unilateral mistake occurred as a result of the mistaken party's own negligence." *Id.* (internal citation omitted).

Although evidence of fraud, duress, or other imposition may, under certain circumstances, provide a basis for recission, Third-Party Plaintiffs have pointed to no such evidence. Rather, Third-Party Plaintiffs rely upon information that suggests only their own misunderstanding and unilateral mistake concerning the clear agreement they signed, but none that casts any doubt upon the propriety of Third-Party Defendants' conduct or gives rise to any reasonable inference of Third-Party Defendants' fraud, coercion, or other trickery.

Third-Party Plaintiffs' inept conduct, standing alone, is insufficient to rescind the APA and fails to create a genuine issue of material fact sufficient to defeat summary judgment. *See Weisman*, 982 F. Supp. 2d at 396 (finding no evidence of fraud, duress, or other imposition in the undisputed facts produced in discovery, and granting summary judgment); *see also Shernoff v. Hewlett-Packard Co.*, Civ. No. 04-4390, 2006 WL 3497798, at *4 (D.N.J. Dec. 4, 2006) (finding no credible evidence of misrepresentation or fraud that might arguably warrant rescinding the agreement), *aff'd*, 302 Fed. App'x 83 (3d Cir. 2008). As such, Third-Party Defendants' Motion will be **GRANTED**.

> **B.    SUMMARY JUDGMENT WILL BE GRANTED AGAINST THE THIRD-PARTY PLAINTIFFS' REMAINING CLAIMS**

All of Third-Party Plaintiffs' claims rest on the allegation that Third-Party Defendants "surreptitiously" modified Schedule 1.3 of the APA to cap Assumed Liabilities at $300,000. However, the Court has found that the APA's integration clause and the parol evidence rule bars the use of any extrinsic evidence to support Third-Party Plaintiffs' claims. The Court will nevertheless explain why each Count will be dismissed.

      1.      <u>Count One</u>

Count One is a claim for breach of the terms of the Promissory Note.  This claim relies on Third-Party Plaintiffs' argument that Third-Party Defendants unilaterally inserted a $300,000 cap on Assumed Liabilities into Schedule 1.3.  As discussed, the record does not support Third-Party Plaintiffs' argument.

      2.      <u>Count Two</u>

Count Two is a claim for breach of the personal guarantees executed by Kurlander and Gelbwachs.  Because no default occurred under the Promissory Note, Kurlander and Gelbwachs's obligations were never triggered.  Without a breach of the Promissory Note, the guarantee cannot be enforced.

      3.      <u>Count Three</u>

Count Three is a claim for breach of the APA.  As discussed, Third-Party Defendants complied with the terms of the APA.  Third-Party Defendants' Assumed Liabilities were capped at the lesser of the payables due to South Central Pools Corp. or $300,000.  Third-Party Defendants paid $300,000.  Therefore, there can be no breach of the APA.

      4.      <u>Count Six</u>

Count Six is a claim for fraud in the inducement.  As already addressed, where misrepresentations made during the course of negotiations are addressed by the terms of the agreement, a claim for fraud in the inducement transforms into a claim for breach of contract.  In such a case, an integration clause—like the one in the APA—will bar the claim.

      5.      <u>Count Seven</u>

Count Seven is a claim for breach of the implied duty of good faith and fair dealing.  This claim fails for the same reasons as Third-Party Plaintiffs' breach of contract claims.   The APA contains express, unambiguous provisions.  Based on the record, Third-Party Defendants acted

within their contractual rights under the APA and the Promissory Note.  This cannot amount to a breach of the implied covenant of good faith and fair dealing.

### 6.    Count Eight

Count Eight is a claim for conversion.  Again, Third-Party Defendants cannot be liable for conversion when they abided by the express terms of the APA.

### 7.    Count Nine

Count Nine is an unjust enrichment claim.  Unjust enrichment is unavailable where a written agreement controls.  *See Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 311 (3d Cir. 1982).  Here, because the Court has determined that the terms of the APA control, this claim must also fail.

### 8.    Count Ten

Count Ten is for reformation. However, reformation is an equitable remedy, not a cause of action.  Generally, the equitable remedy of reformation is available "where there is mutual mistake or where a mistake on the part of one party is accompanied by fraud or other unconscionable conduct of the other party."  *Heake v. At. Cas. Ins. Co.,* 15 N.J. 475, 481, 105 A.2d 526 (1954); *see also Phillips v. Metlife Auto & Home/Metro. Grp. Prop. and Cas. Ins. Co.,* 378 N.J. Super. 101, 104, 874 A.2d 617 (App. Div. 2005).  Because this Court has determined that there is no evidence of mutual mistake here or that Third-Party Defendants acted fraudulently or unconscionably, this claim must also fail.

### 9.    Count Eleven

Finally, Count Eleven is for unilateral mistake.  Again, this claim is not actually a cause of action but is instead an equitable remedy.  *See Alexander*, 991 F. Supp. at 442.  Regardless, this Court has already determined that there was no evidence of a unilateral mistake here.  As such, this claim must also fail.

In sum, summary judgment will be entered in favor of Third-Party Defendants on Counts One, Two, Three Six, Seven, Eight, Nine, Ten, and Eleven.

### C.    THIRD-PARTY PLAINTIFFS' COUNTERCLAIM

Third-Party Defendants also move for summary judgment on their own counterclaim for breach of contract. This Court has determined that the terms of the APA dictate that Third-Party Defendants' Assumed Liabilities are the lesser of the value of all payables due to the South Central Pools Corp. and $300,000. Section 1.4 of the APA states that "Sellers and Owners shall, and shall cause each of its and their Affiliates to, pay and satisfy in due course all Excluded Liabilities when they are obligated to pay and satisfy." (*See* Ex. 13.) The Buyer—here, Third-Party Defendants— "shall not assume or be obligated to pay, perform or otherwise discharge any Liabilities of Seller." (*Id.*)

Third-Party Defendants have complied with the terms of the APA and paid $300,000 in Assumed Liabilities. Third-Party Plaintiffs have not complied with the terms of the APA. They still owe more than $362,566 to various vendors and suppliers. (*See* Moving Br. at 20.) Accordingly, summary judgment is entered in favor of Third-Party Defendants on its counterclaim for breach of contract. Third-Party Plaintiffs are liable for all obligations exceeding $300,000.

### IV.    CONCLUSION

For the reasons stated above, the Court will **GRANT** Third-Party Defendants' Motion for Summary Judgment. An Order granting summary judgment will be entered in favor of Third-Party Defendants as to Counts One, Two, Three, Six, Seven, Eight, Nine, Ten, and Eleven. Additionally, summary judgment will be entered as to Third-Party Defendants' counterclaim for breach of contract insofar as Nicholas Pools will be held liable for all liabilities exceeding the

19

$300,000 cap provided in the Asset Purchase Agreement.  Ocean's damages for its counterclaim will be determined at a later time.  An appropriate Order will follow.

Date: June 29, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**